CHARLES L. GLEESON, APPELLANT, v. CHRIS F. FRAHM AND OLGA K. FRAHM, HUSBAND AND WIFE, APPELLEES.
320 N.W.2d 95

Filed May 28, 1982. No. 43773.

Jon A. Sedlacek, for appellant.

Gregory P. Drew, for appellees.

Heard before KRIVOSHA, C.J., WHITE, and HASTINGS, JJ., and BROWER and EMPSON, D. JJ.

EMPSON, D.J.

This is an action for specific performance. On July 31, 1978, the defendants, Chris F. Frahm and Olga K. Frahm, executed for consideration an option, which is in pertinent part as follows: "KNOW ALL MEN BY THESE PRESENTS: That ...

.[Frahms] hereinafter referred to as First Party . . . in consideration of the sum of One Dollar and other good and valuable consideration . . . paid . . . by . . . second party . . . hereby agree to hold, until the 1st day of January, 1980, 12:00 o'clock A.M., . . . subject exclusively to the order of the said second party or his, her or their assigns, the. following described property to wit: [property described] or to transfer and convey the said property by warranty deed . . . at any time within the time above prescribed, to the said second party or to such person or persons as he . . . may direct, at and for the price of One Thousand Two Hundred and Fifty (1,250) Dollars per acre payable on the following terms: 25% down payment, balance payable in ten (10) annual installments bearing interest at the rate of 8% per annum . . . .

. . . .

". . . if there should be any delay on the part of the first party in perfecting the title to the above property for more than thirty (30) days, after notice shall have been given of the election of the holder of this option to purchase the aforesaid property, then, and in that event, the holder of this option shall have the right to cancel this option, and upon the exercise of such right of cancellation, shall receive back the consideration paid for this option . . . ." The option was assigned to the plaintiff, Charles L. Gleeson.

On December 28, 1979, Gleeson mailed to the Frahms a document entitled "Acceptance of Option to Purchase," which is in pertinent part as follows: "I, Charles L. Gleeson, as Assignee . . . do under a certain option agreement made by you on the 31st day of July, 1978, for the purchase of the property described as follows: [property described] hereby elect to exercise such option to purchase, upon the terms as contained in said option agreement and do direct that you transfer and convey said property by Warranty Deed . . . to myself, Charles L. Gleeson and Richard J. Gleeson, as tenants in common.

"Please deliver abstract of title to the real estate certified to date, to my attorney . . . ." The document, received by the Frahms on December 29, 1979, neither contained nor was accompanied by any payment or specific offer of payment of any kind. Gleeson has never offered the Frahms any payment and the Frahms have never taken any steps to convey the property.

No further action was taken by either party until about the middle of January 1980, when Gleeson stopped by the Frahms' home to ask about fencing the property. Chris Frahm told him to go see their attorney, who told Gleeson the sale would not be made. This lawsuit resulted.

The Frahms' answer to Gleeson's petition alleged that the option was not exercised by Gleeson because the "downpayment" required was not tendered or paid before the option expired. They have defended throughout on that basis, and the trial court, upon that same theory, sustained the Frahms' motion to dismiss at the close of Gleeson's case.

The nature of an option has been stated by this court as follows: " ' "An option to purchase real estate is a unilateral contract by which the owner of the property agrees with the holder of the option that he has the right to buy the property according to the terms and conditions of the contract. By such agreement the owner does not sell the land, nor does he at the time contract to sell. He does, however, agree that the person to whom the option is given shall have the right at his election or option to demand the conveyance in the manner specified." ' " *Commuter Developments & Investments, Inc. v. Gramlich,* 203 Neb. 569, 573, 279 N.W.2d 394, .396 (1979); *Phillips Petroleum Co. v. City of Omaha,* 171 Neb. 457, 106 N.W.2d 727 (1960). This definition gives rise to and is implicit in such cases as *Master Laboratories, Inc. v. Chestnut,* 154 Neb. 749, 49 N.W.2d 693 (1951), and *State Securities Co. v. Dar-*

*inger,* 206 Neb. 427, 293 N.W.2d 102 (1980), which hold that the exercise of an option to buy or sell real estate must be unconditional and in accordance with the offer made. Those holdings, in turn, spring from long-standing principles of contract law that the acceptance of any offer, to result in a contract, must be absolute, unconditional, and unqualified. See *Roberts v. Cox,* 91 Neb. 553, 136 N.W. 831 (1912).

The parties may contract to the effect that full or partial performance by the holder of the option is required to exercise the option. If they do so, the contract remains a unilateral one after the option is exercised, that is, the holder having performed, only the owner remains bound to perform. If they do not so contract, the holder may exercise by promising to perform, in which case the contract becomes bilateral—both parties are bound by their promises to perform the contract. Where the contract specifies the required manner of acceptance, the holder must conform. Where the manner of acceptance is not specified, the holder may exercise by promising to perform what the option requires of him. Restatement (Second) of Contracts § 32 (1981). The option contract in this case does not specify any particular manner of exercise or acceptance.

It is significant that the contract gives the Frahms 30 days to perfect title after notice of election of Gleeson to purchase. It is more significant that upon the Frahms' failure to perfect title, Gleeson shall "receive back" not the downpayment but the "consideration paid for this option," i.e., "One Dollar and other good and valuable consideration." The Frahms' contention that proper exercise of the option required a downpayment before the Frahms had displayed good title is untenable. Gleeson's letter of acceptance, couched in the words of the option contract itself, is a clear exercise of the option, by which Gleeson became bound to pay the price upon

the Frahms' showing of good title and their offer of a warranty deed.

The judgment is reversed and the cause is remanded to the District Court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.

WHITE, J., dissenting.

I dissent. The terms of the option require a downpayment of 25 percent at the time the option is exercised. Since no downpayment was received by January 1, 1980, the option expired. I would have sustained the District Court's order dismissing the plaintiff's petition.

I am authorized to state that Brower, D.J., joins in this dissent.