IN RE ESTATE OF KYLE CASSELMAN, DECEASED.
KYLA CASSELMAN AND EDGAR RUSSELL, APPELLANTS, V. JAMES CASSELMAN, APPELLEE.

365 N.W.2d 805

Filed April 5, 1985.   No. 84-189.

James M. Carney of Atkins, Ferguson, Zimmerman, Carney & Law, for appellants.

Clark G. Nichols of Winner, Nichols, Douglas and Kelly, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is the second appearance of this case before this court. The first was *In re Estate of Casselman, ante* p. 516, 364 N.W.2d 27 (1985) (*Casselman I*). In that case we held that the purported codicil to Kyle Casselman's will was invalid, and, as a result, Kyle's son, James, remained a devisee under the will itself, which was valid. Other devisees under the will were Dawna (sometimes Donna) Filbey, now Dawna Casselman (a daughter), Kyla Casselman (a daughter), and Harold Clark. Two other daughters were specifically disinherited in the will. The instant appeal (*Casselman II*) is from the district court's affirmance of an order of the county court refusing to appoint Kyla Casselman and Edgar Russell, both named in the will as

coexecutors, to the position of personal representatives, and an order of the county court appointing to that position Harry R. Meister, a stranger to the will and not related to the testator but nominated by James Casselman.

We first observe that, as appellee states, the record in this proceeding is "scanty." Appellee suggests that, since we review only errors appearing on the record, our review in this matter is limited. We note that

> where cases are interwoven and interdependent and the controversy involved has already been considered and determined in a prior proceeding involving one of the parties now before the court, the court has a right to examine its own records and take judicial notice of its own proceedings and judgment in the prior action.

*Peterson v. The Nebraska Nat. Gas Co.*, 204 Neb. 136, 138, 281 N.W.2d 525, 527 (1979); *Cedars Corp. v. Sun Valley Development Co.*, 213 Neb. 622, 330 N.W.2d 900 (1983). We therefore take judicial notice of the record in *Casselman I*.

As many of the facts are set forth in *Casselman I*, we need only recite the additional facts relevant to this particular appeal. Kyla Casselman (Kyla) and Edgar Russell (Edgar), appellants herein, were nominated as coexecutors in Kyle's will. On July 20, 1982, Kyla filed an amended petition for formal probate of Kyle's will and codicil and for the appointment as personal representatives of the persons nominated in the will as coexecutors. This amended petition complied fully with the requirements of Neb. Rev. Stat. § 30-2426 (Reissue 1979). In accordance with the provisions of Neb. Rev. Stat. § 30-2427 (Reissue 1979), the county court set a hearing on the amended petition for August 12, 1982. Proper notice was given to all parties of the hearing, as required by Neb. Rev. Stat. § 30-2220 (Reissue 1979). On August 11, 1982, Daniele Casselman, a minor daughter of Kyle, appearing through her mother, filed her objection to the will and codicil.

On August 12, 1982, the date set for hearing on the amended formal petition, the record does not show that any hearing was held, nor was any order of continuance as to the date of trial entered. Instead, on that day, Kyla and Edgar filed an "Application for Appointment of Special Administrator in

Informal Proceeding."

By definition set out in Neb. Rev. Stat. § 30-2209(1) (Reissue 1979), an "application" means "a written request to the registrar for an order of informal probate or appointment under part 3 of Article 24 [Neb. Rev. Stat. §§ 30-2414 to 30-2424 (Reissue 1979)]." Pursuant to Neb. Rev. Stat. § 30-2457(1) (Reissue 1979), a special administrator may be appointed "informally by the registrar on the application of any interested party when necessary to protect the estate of a decedent prior to the appointment of a general personal representative . . . ." Accordingly, the county judge appointed Kyla and Edgar as special administrators and issued letters of special administration to them. As stated, this appointment was done in an informal proceeding. No notice was given to anyone. It is obvious that this informal proceeding took place while a formal hearing was pending. (The statutory difference between formal and informal proceedings is determined by the definitions of the respective terms in subsections (16) and (20) of § 30-2209; i.e., formal proceedings are "those conducted before a judge with notice to interested persons," while informal proceedings are "those conducted without notice to interested persons by an officer of the court acting as a registrar for probate of a will or appointment of a personal representative.")

This overall procedural approach is contemplated by the Nebraska Probate Code (with exceptions hereinafter noted) in Neb. Rev. Stat. § 30-2407 (Reissue 1979), which states in subsection (1) that "each proceeding before the court or registrar is independent of any other proceeding involving the same estate." We note, however, that Neb. Rev. Stat. § 30-2425 (Reissue 1979) provides in part: "During the pendency of a formal testacy proceeding, the registrar shall not act upon any application . . . for informal appointment of a personal representative of the decedent." A personal representative includes a special administrator. See § 30-2209(33). In this case the special administrators were appointed in an informal proceeding. The informal appointment took place on the day a formal hearing was set, and, as a result, apparently all interested parties had notice that some hearing was to occur on

that date; and the appointed special administrators served from August 12, 1982, to October 3, 1983, without challenge. The relevancy of the actions of the special administrators to the present proceedings is only that those actions became the basis of the county court's refusal to appoint Kyla and Edgar as the regular personal representatives, as discussed below.

As stated, the county court did appoint Kyla and Edgar as "Special Administrators" on August 12, 1982. On August 23, 1983, Kyla and Edgar filed their "Application for Appointment of Co-Personal Representatives." By the use of the word "application" rather than the word "petition," and from the wording of the document, this filing appeared to seek an informal proceeding on the requested appointment. No notice is shown to have been given, nor was any hearing date requested or set. On October 3, 1983, in the county court, James Casselman filed his objection to the appointment of Kyla and Edgar and asked for the appointment of Harry R. Meister. Again, no hearing date was requested or set. The attorney for James certified that on that same date a copy of the objection was sent to "the attorney for the opposing party."

The record shows no further court orders or notices concerning a hearing on the application of Kyla and Edgar to be appointed as personal representatives, nor on the objection of James nor James' request that Harry R. Meister be appointed.

On October 3, 1983, the same day James' pleading was filed, a hearing was held before the county judge. At the hearing James was present with counsel; Kyla and Edgar were present with counsel; and Daniele was present by counsel. No other interested persons or counsel for such persons were shown to be present. The trial judge of the county court stated at the beginning of the hearing that the matters before the court were the "petition for the appointment of the personal representatives . . . . We have also an objection to the appointment of the nominated individuals . . . ." The hearing then ensued. Three witnesses were called. Accounting reports of the activities of the appointed special administrators were received in evidence. These reports represented six of the seven exhibits received at the hearing and covered the periods from April 10 to August 12, 1982; August 12, 1982, to March 8, 1983;

March 8 to March 23, 1983; April 10, 1982, to August 12, 1983; March 16 to September 8, 1983; and August 12, 1982, to February 28, 1983. The seventh exhibit was a group of 34 carbons reflecting checks written by the special administrators and sent to James Casselman, so he "was able to know what was going on." The carbons did afford a way to determine "what was going on" if unfolded and held up to a mirror for reading.

Based on the evidence presented at that hearing as to the activities of the special administrators, the county court found that "Kyla Casselman and Edgar Russel [sic] are not suitable persons to act as personal representatives of the estate." The county court then appointed Harry R. Meister.

Kyla and Edgar timely appealed from the county court to the district court, alleging that the county court erred in refusing to appoint them as personal representatives and in appointing Harry R. Meister. The district court reviewed the case for error appearing on the record, as provided in Neb. Rev. Stat. § 24-541.06 (Cum. Supp. 1982) (now amended in Cum. Supp. 1984, effective July 1, 1985), and affirmed the judgment of the county court. Kyla and Edgar appeal to this court, alleging as error that the district court failed "to find that the County Court had not proceeded according to the provisions of [Neb. Rev. Stat. § 30-2412 (Reissue 1979)] of the Nebraska Probate Code in appointing Harry Meister as personal representative." We affirm in part and reverse in part.

In their brief appellants contend that § 30-2412 controls the appointment of personal representatives in estate matters in Nebraska. It is true that § 30-2412 sets out the priorities among various persons seeking appointment as a personal representative, but it is not accurate to say that the statute controls all aspects of appointing personal representatives. Neb. Rev. Stat. § 30-2438 (Reissue 1979) describes the procedures necessary in "Formal proceedings concerning appointment of personal representative." Section 30-2426 concerns "Formal testacy or appointment proceedings; petition; contents." Both §§ 30-2438 and 30-2426 refer back to § 30-2414, which latter statute controls informal appointment proceedings. Appeals from all these proceedings are now

governed by Neb. Rev. Stat. § 30-1601 (Cum. Supp. 1984), effective August 30, 1981, which provides, "In all matters arising under the Nebraska Probate Code, appeals shall be allowed as provided in sections 24-541.01 to 24-541.10 and 24-551." It must be noted that those sections apply only to appeals from county court to district court.

With regard to the appeal to this court from the district court, the Nebraska Probate Code has departed from the Uniform Probate Code and does not set out the provisions of Unif. Prob. Code § 1-308, 8 U.L.A. 42 (1983), which is the uniform code's equivalent of Nebraska's Neb. Rev. Stat. § 30-2217 (Reissue 1979). Instead of the Uniform Probate Code's provisions concerning appeals to a state's highest appellate court, § 30-2217 states, "Appellate review under this code shall be governed by Chapter 30, article 16," which now consists only of § 30-1601, and only provides that appeals are to be conducted as set out in Neb. Rev. Stat. §§ 24-541.01 to 24-541.10 (Cum. Supp. 1982) and § 24-551 (Reissue 1979). The Nebraska Probate Code, therefore, does not set out the procedures governing appeals to this court from the district court. In those circumstances the general rule as to the standard of review is set out in Neb. Rev. Stat. § 25-1911 (Reissue 1979), which provides for appellate review "for errors appearing on the record" in cases such as this involving the appointment of a personal representative by the county court.

Our review of the record presented to us leads us to the conclusion that there is no error in the county court's finding that Kyla and Edgar were not suitable to act as personal representatives of the estate of Kyle Casselman. The accounting reports of the activities of Kyla and Edgar, while acting as special administrators, show clearly that their fiduciary position was thoroughly abused. The reports are confusing and overlapping, and show questionable items of expense, including donations to churches and disbursements to Kyla for personal needs. As set out above, requests for information made by another devisee were responded to by forwarding carbons, which by the nature of retained carbons were transposed so that they were unreadable unless held in front of a mirror. The actions of Kyla and Edgar as special

administrators were such that they were disqualified from having any priority to be appointed as personal representatives, even though nominated in the decedent's will to be coexecutors. See § 30-2414.

With regard to the appointment of Harry R. Meister, a different situation is presented. Kyla, Edgar, James, and Daniele all took part in the hearing of October 3, 1983, in the county court. There are, however, other devisees affected by the appointment of a personal representative of Kyle Casselman's estate. Dawna Casselman and Harold Clark were named as devisees. Those devisees had no notice of the October 3, 1983, hearing, although they had been notified of the filing of the formal petition on July 20, 1982, and had been notified of a hearing to be held on that petition on August 12, 1982. Such notice, however, could not operate to serve as notice of a contested hearing on October 3, 1983, particularly when the requested appointment of Harry R. Meister was filed on the same day.

Harry R. Meister, as nominee of James, a devisee, has certain priorities as set out in Neb. Rev. Stat. § 30-2412 (Reissue 1979). Other devisees have the same priority, and those devisees are entitled to notice of the hearing to appoint a personal representative. That notice, as required by § 30-2220, was not given. The case, therefore, must be remanded to the district court with directions to return the case to the county court for a hearing on the question of who shall be appointed the personal representative of Kyle Casselman's estate.

That part of the order of the county court refusing to appoint as personal representatives the persons named in the will is affirmed. A further hearing shall be held on the appointment of Harry R. Meister as personal representative, and proper notice of such hearing shall be given to all interested persons.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.